MICHELMAN & ROBINSON, LLP
Richard M. Reice
rreice@mrrllp.com
Kathryn T. Lundy
klundy@mrllp.com
800 Third Avenue, 24th Floor
New York, NY 10022
(212) 730-7700
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| NYC ALLIANCE GROUP, LLC | : | |
| | : | Case No. |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| | : | |
| | : | |
| ALLISON BISHOP | : | |
| Defendant. | : | |
| | : | |

-------------------------------------------------------------------X

　　　　Plaintiff NYC Alliance Group, LLC ("'NYC Alliance" or the "Company"), by and

through its attorneys, Michelman & Robinson, LLP, as and for its Complaint, alleges as

follows:

### NATURE OF THE CASE

　　　　1.　　　　This action is brought to remedy the unlawful conduct of Defendant Allison Bishop

("Defendant") in the misappropriation and retention of NYC Alliance's confidential, proprietary

and trade secret information and breach of her contractual and common law obligations.

Defendant took extraordinary measures and converted, from soon after the beginning of her

employment to the date she announced her resignation, countless files, client lists and other

trade secret and confidential information of NYC Alliance. Now that Defendant's misconduct

has been uncovered (although the full extent of her wrongdoing remains unknown), NYC Alliance seeks to hold Defendant accountable, stopping her from further exploiting NYC Alliance's confidential information and putting an immediate halt to the substantial and irreparable harm and damages Defendant has caused and continues to cause NYC Alliance as a result of her unlawful activities.

## THE PARTIES

2.    NYC Alliance was and is a foreign limited liability company organized under the laws of the State of Delaware licensed to do business in New York with a principal place of business at 1411 Broadway, 15th Floor, New York, New York 10018.

3.    Its operations are nationwide, and it is engaged in interstate commerce.

4.    Upon information and belief, Defendant resides in New Rochelle, New York and conducts business in the State and County of New York.

## JURISDICTION AND VENUE

5.    This Court has exclusive subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 in that this case arises under 28 U.S.C.A. § 1831, *et seq.*  The Court has supplemental jurisdiction over NYC Alliance's remaining claims under 28 U.S.C. § 1367.

6.    This Court has personal jurisdiction over Defendant because she resides and conducts business in New York and has committed acts of trade secret misappropriate and other torts in the State of New York and in this district.

7.    Venue is properly laid in this district pursuant to 28 U.S.C.A. § 1391(b) because a substantial part of the events giving rise to the claims asserted herein occurred within the Southern District of New York.

## GENERAL ALLEGATIONS

8.      NYC Alliance is a significant apparel manufacturer/wholesaler that designs and markets women's apparel. Its goods are purchased by its many retail customers that include Saks Fifth Avenue, Avenue stores, Walmart, and Amazon. Those retailers sell NYC Alliance produced goods under their own private label or a NYC Alliance label such as "565" or "Adyson Parker."

9.      Defendant was hired by NYC Alliance on or about November 9, 2018. She tendered her voluntary resignation on March 29, 2019. Although Defendant wanted her last day of to be on March 29, 2019, despite her contractual obligation to provide sixty (60) days' notice, it was agreed that her last day of employment would be April 19, 2019 to provide for an orderly transition. The balance of her employment, however, was cut short when it was discovered that she had stolen and converted well over 100 NYC Alliance documents, the vast majority of which contain confidential trade secret material.

10.      As part of a routine security review, NYC Alliance determined that Defendant had for months been systematically sending confidential, NYC Alliance trade secret documents beyond the NYC Alliance firewall to Defendant's private Gmail account: "allisondeanebishop.com." Those documents ranged from pre-production product descriptions, business plans, pricing materials, key business contact information, factory quality audit reports, margin information, and production time lines--all information that would be useful to a competitor.

11.      NYC Alliance has copies of all of the misappropriated emails and attachments located to date that were sent from a NYC Alliance email account to Defendant's private Gmail or other accounts. The transmission of NYC Alliance information on the emails list sender, recipient, time and date of transmission. The timing of the transmission show that they were deliberate and

batched.  This is not a case where an employee innocently sent work home, so they could "work on it later."

    12.    NYC Alliances started not long after Defendant joined NYC Alliance in November 2018 (the first day was on December 28, 2018) and continued until the day she gave notice on March 29, 2019.  However, the pace of the transmissions increased dramatically in the months of February and March 2019.  This can be seen from the chart below. Each entry reflects the date and time she sent an email from her NYC Alliance account to her Gmail account.

| 3/29 | 3/28 | 3/27 | 3/26 | 3/25 | 3/24 |
|---|---|---|---|---|---|
| 7:33 AM | 5:55 PM<br>5:54 P<br>11:05 A<br>11:04 A<br>11:03 A | 4:33 P<br>4:26 P<br>4:21 P<br>4:20 P<br>4:20 P<br>4:19 P<br>3:25 P<br>3:11 P<br>11:45 A | 12:21 P<br>12:21 P | 8:19 A<br>8:19 A | 3:55 P |
| **3/21** | **3/20** | **3/19** | **3/15** | **3/10** | **3/8** |
| 6:34 P<br>9:29 A | 4:59 P<br>4:58 P<br>4:56 P<br>11:42 A<br>11:26 A<br>11:24 A | 7:43 A<br>6:37 A<br>6:37 A<br>6:31 A<br>6:31 A<br>6:29 A<br>6:28 A<br>6:28 A | 6:10 P<br>5:29 P | 4:31 P<br>4:29 P<br>4:15 p<br>4:13 p | 2:28 P |
| **3/1** | **2/28** | **2/26** | **2/25** | **2/22** | **2/20** |
| 3:31 P<br>2:37 P | 3:58 P<br>2:58 P<br>2:16 P | 12:31 p | 5:34 P<br>3:54 P<br>3:29 P | 5:47 P<br>4:22 P<br>3:53 P<br>3:52 P<br>3:51 P | 8:42 A |
| **2/19** | **1/22** | **1/21** | **1/16** | **1/11** | **1/4** |
| 10:28 A | 5:51 P | 10:10 A | 2:26 | 11:25 A | 11:07 A |
| **12/28** | | | | | |
| 1:21 A | | | | | |

**The Fashion Industry is Fast-Paced and Pre-production Confidentiality is Essential**

13.     What a company's apparel line looks like, what its customers are ordering, when, in what colors, and at what price and margin, and key client contacts are all things a competitor would love to know.  The copying of products in the fashion industry is rampant and can be done quickly.  If a customer has information about a company's new line, margin information, and customer contacts, before, in this case NYC Alliance's goods, hit the showroom and consumer markets, its goods can be copied, and pricing undercut.  Thus, confidentiality is essential.

14.     The materials that Defendant emailed to herself contain such information. Moreover, they include not just information about the product and sales Defendant was working on for her private label division, but information from other NYC Alliance divisions with which she had little involvement. This included confidential marketing information about items sold under the 565 and Adyson Parker labels.

15.     Examples of the materials Defendant sent to herself can only be of use to her if she was going to a competitor or starting her own company.  Some of the key documents include emails pertaining to sales made to Meijer stores including what products they are interested in and at what price-point, what NYC Alliance is selling them and future marketing plans to expand sales; marketing/business plans for the brand Adyson Parker, Redy by Adyson Parker, Cozy Collette and others; and internal notes dated 12/20/2019 about the private label business, sales prospects, key contacts, and the products to offer them.

**Many of the Misappropriated Documents Pertained to Amazon.com**

16.     With the trend toward on-line retail and the huge marketing/sales power of Amazon.com, NYC Alliance decided to market its products to Amazon to be sold on the Amazon.com website as Amazon branded merchandise.  However, selling to Amazon is not a

casual affair. A distinct line is created that aside from the basics of product design, color, size and price, must satisfy a whole range of Amazon mandated standards: from factory design, to working conditions, worker safety standards, to specialized labeling, to its Amazon sales program. Among Defendant's most important tasks was building relationships with Amazon and selling NYC Alliance goods to Amazon.

17.     For example, NYC Alliance was required to hire and pay for an Amazon designated third party to visit its manufacturing facility to conduct a workplace audit and make sure that the factory and working conditions comports with Amazon standards. That report, dated March 11-12, 2019, is highly confidential and would be of great interest to NYC Alliance competitors who would love to know the ins and outs of NYC Alliance production facilities and if any aspect needed remediation. Yet, that didn't stop Defendant from sending the report to her private Gmail account.

18.     In addition to the factory audit, Defendant sent to herself a number of other Amazon related documents generated by NYC Alliance. They included proposed products, photos of samples, their material composition, desired colors and yarns, their ready dates, and notes about production issues. All of this pre-production information is confidential and would be of great interest to a competitor. Fashion has a short shelf life, and if a competitor can steal your designs before they hit the stores, then a wholesaler may have nothing unique to sell.

**NYC Alliance Security**

19.     NYC Alliance computer files and email files are all password protected. Defendant had access 24/7 to her NYC Alliance emails from her cell phone, any other mobile device in her possession and control, desktop computer and laptop. As such, there is/was no reason for her send materials to her own personal Gmail account accept to misappropriate them and convert them for her own use and purpose.

**Defendant's Employment Agreement**

20.     Defendant entered into an Employment Agreement with NYC Alliance on November 9, 2018 (the "Agreement"). It is for a two-year term, terminable on 60 days written notice. Her base salary was $275, 000 plus bonus 2019 in an amount not less than $50,000.  She was also entitled to commission wages based on sales.

21.     Disputes arising under the Agreement are subject to New York law and venue in the S.D.N.Y (or State Supreme New York) is specifically designated in the Agreement.

22.     Exhibit A to the Agreement contains a comprehensive confidentiality provision: That provision reads in part:

**A.     Confidentiality**

You acknowledge that, during the course of your employment by the Company, you will receive and/or have access to the Company's trade secrets and confidential and proprietary information relating to the Company...

The Company's trade secrets and confidential and proprietary information include, without limitation, all information, whether communicated orally, in writing, electronically or in any other tangible form, not previously disclosed to the public or to the trade by the Company concerning or referring in any way to the business or affairs of the Company; proprietary to the Company; not generally known to the public; and/or which in the ordinary course of business is maintained by the Company as confidential (collectively, "Confidential Information"). The Company's Confidential Information is among its most valuable assets, and you hereby acknowledge that all such Confidential Information is the property of the Company and covenant to maintain its confidentiality and protect it from misuse and/or disclosure to unauthorized persons or entities.

By way of example (but not limitation), Confidential Information includes, without limitation, information relating to the Company's business opportunities, business plans, business methods, clients, customers, suppliers and/or vendors (including lists, contact information, contracts, terms, preferences, requirements and/or dealings with such individuals/entities), frameworks, models, marketing, packaging, sales, purchasing, merchandizing, operations, pricing, costing, research, analyses, designs, drawings, files, records, data, plans, specifications, financials, training, database, engineering, computer

7

programs, electronic communications systems, technical information, employees, contractors, compensation, trade secrets, patented processes, inventions, copyrights, techniques and other information in any way concerning or referring to the Company, its products, services, research, concepts, processes, engineering and/or development and all other information concerning how the Company creates, develops, acquires or maintains its products, services and marketing plans, targets its potential clients and otherwise operates its business, or otherwise designates as confidential.

You acknowledge and agree that the Company's Confidential Information constitutes valuable, highly confidential, special and unique property of the Company. You shall hold in a fiduciary capacity for the benefit of the Company and otherwise keep strictly confidential all Confidential Information obtained by you during your employment by the Company. Except as required by law or an order of a court or governmental agency with competent jurisdiction, you shall not, during your employment with the Company or at any time thereafter, disclose any of the Company's Confidential Information, directly or indirectly, to any person or entity for any reason or purpose whatsoever, nor shall you use the Company's Confidential Information in any way, except as necessary in the course of your employment with the Company or with prior written consent of the Company's Managing Director, Bo Guo. Additionally, you shall take all reasonable steps to safeguard the Company's Confidential Information and to protect it against disclosure, misuse, loss and theft....techniques and other information in any way concerning or referring to the Company, its products, services, research, concepts, processes, engineering and/or development and all other information concerning how the Company creates, develops, acquires or maintains its products, services and marketing plans, targets its potential clients and otherwise operates its business, or otherwise designates as confidential.

The Company has invested, and continues to invest, considerable amounts of time and money in developing and maintaining its Confidential Information and using it in connection with its business, know-how, obtaining and developing the goodwill of its clients and other external relationships. You acknowledge that any misappropriation or unauthorized disclosure of the Company's Confidential Information by you (or your representative(s)) in any form would irreparably harm the Company...

23.     Defendant's transmission of NYC Alliance confidential information violated the confidentiality provisions of the Agreement. Moreover, Defendant is a savvy highly-compensated executive. Her CV describes her as an "Accomplished fashion and apparel professional..." She

8

has been in the fashion industry since 1987 and has held positions from Buyer to Vice President. She founded her own company in 2012 (Nation Design Partners), and most recently was VP of Private Label for Marubeni, a large international apparel manufacturer-where, by the way, she has had a contract that contained restrictive covenants. Thus, Defendant knew or should have known that what she was doing was a breach of trust, contract, and law.

24.     NYC Alliance is very afraid that Defendant has knowingly and intentionally misappropriated its trade secrets to facilitate a move to a new employer or start a new enterprise.

25.     Regardless of the reason for her actions, she has been caught red-handed, and NYC Alliance needs to secure its confidential information, obtain its return, and prevent its dissemination to third parties.

**FIRST CAUSE OF ACTION**
**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.)**

26.     NYC Alliance repeats and realleges the allegations set forth in paragraph 1 through 25 as if fully set forth herein.

27.     The improper acts described above consisting of misappropriation of the Confidential Information by improper means comprises a violation of the Economic Espionage Act, 18 U.S.C.A. §§ 1832(a), 1839(3) *et seq.,* as amended by the Defend Trade Secrets Act of 2016 ("DTSA").

28.     The Confidential Information described above comprises "trade secrets" within the DTSA.

29.     The Confidential Information comprises a formula, pattern, business data compilation, program, device, method, designs, technique, invention, plan, procedure and process.

30.     The Confidential Information is used related to and intended for use in interstate commerce.

9

31.     NYC Alliance derives independent economic value from the Confidential Information because it is not generally known to, and is not readily ascertainable through proper means by, other persons who may be able to obtain economic value from its disclosure or use.

32.     An award of money damages will not be sufficient to make NYC Alliance whole. The lose of its intellectual property and confidential information may damage NYC Alliance revenues and loss of standing in the industry.   Once a client like Amazon is lost via unfair competition, the ability to sell to Amazon or other retail clients may be lost or interrupted for years to come.

33.     The secrecy of the Confidential Information is maintained by NYC Alliance by limiting access to the Confidential Information only to persons with a need-to-know and it is password protected.  Moreover, it is general company policy to have executives agree and covenant in writing to maintain the secrecy of the Confidential Information.

34.     Defendant agreed in writing and covenanted to maintain the confidentiality of the Confidential Information; not to disclose the Confidential Information without written consent; remove it from the Company's premises (its server) not to otherwise use the Confidential Information; and to promptly upon NYC Alliance's request return or destroy all copies of the Confidential Information. Despite her written agreements, Defendant misappropriated the Confidential Information by stealing or otherwise without authorization copying, duplicating, downloading, replicating the Confidential Information.

35.     Given the nature of the information wrongfully taken, it is reasonable to suspect that it will be used by Defendant or Defendant's subsequent employer to unfairly compete with NYC Alliance.

36.     Defendant's misappropriation and disclosure of the Confidential Information was

for improper personal gain.

37.     Defendant's misappropriation of the Confidential Information was done through improper means including, but not limited to, the outright theft of the Confidential Information by sending it to her private Gmail account and other yet to be determined methods; the breach of her express written duties to maintain the secrecy of and limit the disclosure of the Confidential Information; obtaining the Confidential Information through electronic espionage; and accessing and possibly disseminating the Confidential Information without authorization and exceeding the scope of her authorization to transmit the Confidential Information outside the firewall for her personal gain.

38.     As a direct and proximate result of these wrongful actions, NYC Alliance has sustained economic injury for which it is entitled to monetary compensation.

39.     NYC Alliance is also entitled to the return of all property and information wrongfully converted, including but not limited to the Confidential Information, as well as an injunction to prevent further unlawful dissemination of NYC Alliance's property.

40.     As a result of the foregoing, NYC Alliance stands to sustain significant injury for which it is entitled to monetary compensation in an amount to be determined at trial; the return of all property wrongfully converted, including but not limited to the Confidential Information; and an injunction to prevent further unlawful dissemination of the Confidential Information.

### SECOND CAUSE OF ACTION
#### Breach of Contract

41.     NYC Alliance repeats and realleges the allegations set forth in paragraph 1 through 40 as if fully set forth herein.

42.     Defendant entered into the Agreement with NYC Alliance on November 9, 2018

43.     Exhibit A to the Agreement contains a comprehensive confidentiality provision.

44.     NYC Alliance satisfied its contractual obligations under the Agreement.

45.     Defendant breached the Agreement by, among other things, misappropriating NYC Alliance's trade secrets, confidential and proprietary information in express violation of the confidentiality provision contained in the Agreement.

46.     The Agreement expressly states that the Company's Confidential Information is "valuable, highly confidential, special and unique property of the Company and that Defendant has 'no right to it.'"

47.     Moreover, in the Agreement, Defendant expressly acknowledge that "misappropriation or unauthorized disclosure of the Company's Confidential Information…in form would irreparably harm the Company.'

48.     NYC Alliance has been damaged as a result of Defendant's breach of the Agreement.

49.     Defendant's breach of contract was intentional, knowing, willful, malicious, fraudulent and oppressive.  NYC Alliance is therefore entitled to injunctive relief an award of exemplary damages and reasonable attorneys' fees in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Breach of the Implied Duty of Good Faith and Fair Dealing

50.     NYC Alliance repeats and realleges the allegations set forth in paragraph 1 through 49 as if fully set forth herein.

51.     The terms of the Agreement between Defendant and NYC Alliance impose an obligation of good faith and fair dealing on Defendant.

52.     Defendant owed NYC Alliance a duty to deal fairly and in good faith, including but not limited to, a duty to refrain from reducing the goodwill of NYC Alliance, to maintain the secrecy and refrain from misappropriating and unlawfully using and disclosing NYC Alliance's trade

12

secrets and confidential and proprietary information.

53.     By the acts described above, Defendant breached these duties by, *inter alia*, misappropriating and unlawfully using and disclosing NYC Alliance's trade secrets and confidential and proprietary information.

54.     As a direct proximate result of Defendant's breach, NYC Alliance was deprived of the benefits of the Agreement.

55.     Defendant's conduct, as alleged-above, has caused and will continue to cause NYC Alliance substantial injury including, but not limited to, actual damages, lost profits, harm to its reputation and diminution in value of its business.

## FOURTH CAUSE OF ACTION
### Breach of Duty of Loyalty

56.     NYC Alliance repeats and realleges the allegations set forth in paragraph 1 through 55 as if fully set forth herein.

57.     Defendant owed a duty of loyalty as an employee of NYC Alliance.

58.     Pursuant to her Agreement, and as a matter of common law, Defendant was obligated to protect NYC Alliance's confidential information.

59.     Defendant breached that duty by acting to advance her own personal interest at the expense of NYC Alliance's interests.

60.     Specifically, Defendant intentionally and knowingly appropriated NYC Alliance's proprietary and confidential information for her own personal gain in an effort to undermine NYC Alliance's sales and hurt NYC Alliance's good will.

61.     The foregoing breach by Defendant has harmed NYC Alliance.

62.     As a result of the foregoing, Defendant is liable for damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Common Law Misappropriate of Trade Secrets**

63.     NYC Alliance repeats and realleges the allegations set forth in paragraph 1 through 62 as if fully set forth herein.

64.     The rights and interests of NYC Alliance in its confidential information, described above, constitute trade secrets as defined by the common law of the State of New York.

65.     NYC Alliance owns all of the rights, title and interest in and to the trade secrets that Defendant has misappropriated.

66.     Because of NYC Alliance's reliance on the confidentiality provision in its Agreement with Defendant, NYC Alliance provided Defendant with access to and knowledge of NYC Alliance's trade secrets.

67.     Such trade secrets were and are primary assets of NYC Alliance and have actual and potential independent economic value for NYC Alliance.  NYC Alliance has carefully guarded its trade secret information and has taken reasonable steps to maintain its secrecy and protection.

68.     Defendant had knowledge that NYC Alliance regarded the Confidential Information as trade secrets and of her legal obligation and duty, by virtue of the Agreement and her duty of loyalty, to preserve the confidentiality of NYC Alliance's trade secrets.

69.     Notwithstanding the foregoing, Defendant knowingly, willfully and maliciously violated the Agreement and her duty of loyalty and breached NYC Alliance's confidences by misappropriating NYC Alliance's trade secrets for her personal gain.

70.     As a direct and proximate result of Defendant's conduct, NYC Alliance stands to suffer the disruption of its business relationships, dilution of good will, injury to its reputation, misappropriation of its trade secrets and devaluation of its trade secrets and business.

71.     Defendant's misappropriation of NYC Alliance's trade secrets has caused and will

continue to cause NYC Alliance substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets and business.

72.     Defendant's misappropriation of NYC Alliance's trade secrets was intentional, knowing, willful, malicious, fraudulent and oppressive. NYC Alliance is therefore entitled to an award of exemplary damages and reasonable attorneys' fees.

73.     As a result of the foregoing, NYC Alliance has sustained severe economic injury for which it is entitled to monetary compensation in an amount to be determined at trial; the return of all property wrongfully converted, including but not limited to the Confidential Information; and an injunction to prevent further unlawful dissemination of the Confidential Information.

### JURY DEMAND

NYC Alliance hereby requests a trial by jury on all issues so triable by right.

**WHEREFORE**, NYC Alliance respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

(i)     Awarding damages as described in each of the above claims, in favor of NYC Alliance and against Defendant in amounts to be determined at trial;

(ii)    Granting a temporary restraining order and preliminary and permanent injunction against Defendant, enjoining her from violating her legal and contractual duties to NYC Alliance from accessing, using or disclosing NYC Alliance's trade secrets and proprietary and confidential information;

(iii)   Awarding punitive damages in favor of NYC Alliance and against Defendant in an amount to be determined at trial;

(iv)    Attorneys' fees and costs; and

15

(v)    Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 5, 2019

                                MICHELMAN & ROBINSON, LLP

                        By: _____
                                Richard M. Reice
                                Kathryn T. Lundy
                                800 Third Avenue, 24th Floor
                                New York, NY 10022
                                (212) 730-7700
                                *Attorneys for Plaintiff*